TAGGED OPINION



**ORDERED in the Southern District of Florida on February 28, 2025.**

_Scott M. Grossman_

**Scott M. Grossman, Judge**
**United States Bankruptcy Court**

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

In re:

RENZO ENRRICO CAMPANELLA and          Case No. 24-20445-SMG
SUSANA CAMPANELLA,

    Debtors.                                            Chapter 11

_____/

### ORDER DENYING MOTION TO RECONSIDER

    Debtors Renzo Enrrico Campanella and Susana Campanella ask this Court to reconsider[1] its order[2] granting secured creditor BayFirst National Bank ("BayFirst") relief from the automatic stay. Together with their motion for reconsideration, they also filed a motion to value and determine the secured status of the liens of both BayFirst and U.S. Bank Trust Company, National Association, as Trustee, as successor-in-interest to U.S. Bank National Association as Trustee for Angel Oak

---

[1] ECF No. 46.
[2] ECF No. 40.

Mortgage Trust I, LLC, 2018-3, Mortgage-Backed Certificates, Series 2018-3 ("U.S. Bank").[3] BayFirst filed responses in opposition[4] to both motions, and on January 29, 2025, the Court conducted a hearing on these motions. For the reasons that follow, the Court will deny the motion for reconsideration.[5]

## I.    BACKGROUND.

The Debtors filed a joint voluntary chapter 11 bankruptcy petition on October 8, 2024.[6]  When they filed for bankruptcy, they owned a homestead property located at 10945 Windward Street, Parkland, Florida 33076. According to their bankruptcy schedules, the property was worth $1,348,835.20 as of their petition date.

### A.    __The Secured Claims.__

The property is encumbered by a first mortgage in favor of U.S. Bank, which was owed $716,750.24 as of the petition date, and on which interest continues to accrue at 6.624%.[7] BayFirst holds a recorded final judgment of foreclosure entered on August 27, 2024[8] – junior in priority to U.S. Bank's first mortgage – in the original amount of $1,116,860.99.[9] With interest, fees, and costs, as of the petition date BayFirst asserts it was owed $1,131,578.13. Adding this amount to the U.S. Bank mortgage, the Campanellas' property is encumbered by secured claims of $1,848,328.37 – nearly $500,000 more than the value of the property.

---

[3] ECF No. 47.
[4] ECF Nos. 51, 55.
[5] The Court will enter a separate order on the motion to value.
[6] ECF No. 1.
[7] Claim No. 15-1.
[8] ECF No. 35, Ex. F.
[9] Claim No. 8-1.

B.     **The Court Grants BayFirst's Stay Relief Motion.**

On November 12, 2024, BayFirst moved for relief from the automatic stay under 11 U.S.C. §§ 362(d)(1) and (d)(2), or in the alternative, for adequate protection under 11 U.S.C. § 363(e).[10] The Court held a hearing on BayFirst's motion on December 4, 2024. After hearing from counsel for BayFirst and the Campanellas, the Court concluded that BayFirst was entitled to stay relief under both 11 U.S.C. §§ 362(d)(1) and (d)(2).

Under section 362(d)(1) a court must grant a party in interest stay relief "for cause, including the lack of adequate protection of an interest in property of such party in interest."[11] The Court determined that "cause" existed for stay relief here because BayFirst's interest in the property was not adequately protected. "Adequate protection is designed to protect a secured creditor's interest in property from any decrease in value attributable to the automatic stay."[12] Its purpose "is not to protect the secured creditor from loss per se, but to maintain the status quo and prevent any additional loss due to delay after a debtor files its [bankruptcy] petition."[13]

Here, U.S. Bank's first mortgage claim of $716,750.24 is secured by property worth $1,348,835.20. Under 11 U.S.C. § 506(b), U.S. Bank is therefore "oversecured" and entitled to interest, fees, costs, and other charges provided for under its loan documents. BayFirst, on the other hand, is "undersecured." As of the petition date,

---

[10] ECF No. 35.

[11] 11 U.S.C. § 362(d)(1).

[12] *In re Rich Int'l Airways, Inc.*, 50 B.R. 17, 18 (Bankr. S.D. Fla. 1985) (citing *In re Alyucan Interstate Corp.*, 12 B.R. 803, 806–09 (Bankr. D. Utah 1981)).

[13] *Matter of Karl A. Neise, Inc.*, 16 B.R. 600, 601 (Bankr. S.D. Fla. 1981) (citing *Alyucan Interstate Corp.*, 12 B.R. at 808–809).

there was only $632,084.96[14] in value in the property to secure BayFirst's $1,131,578.13 claim. But with U.S. Bank being oversecured and being entitled under section 506(b) to post-petition interest and other charges, the value of BayFirst's judgment lien is decreasing each day this case is pending. Specifically, with interest accruing on U.S. Bank's claim at 6.624% – or approximately $130 per day – BayFirst's interest in the property decreases by this amount every day that passes in this case.[15] The increase in amount of U.S. Bank's oversecured first mortgage claim at the expense of BayFirst's undersecured second lien foreclosure judgment claim renders BayFirst not adequately protected. This constituted cause for stay relief under section 362(d)(1).

Under section 362(d)(2), a court must grant stay relief with respect to a stay of an act against property if the debtor does not have equity in the property and the property is not necessary to an effective reorganization.[16] Because the Campanellas do not have any equity in the property and it is not necessary to an effective reorganization, stay relief was warranted here under section 362(d)(2) as well. Although the Campanellas profess a desire to retain the property, courts interpret property being "necessary to an effective reorganization" to mean "[1] the property has sufficient equity which could be refinanced and the plan could be funded from a new loan, [2] that the property will be sold and the sale will produce sufficient monies

---

[14] $1,348,835.20 (value of property) – $716,750.24 (U.S. Bank mortgage) = $632,084.96.
[15] This corresponds to approximately $3,956 per month, and $47,478 per year.
[16] 11 U.S.C. § 362(d)(2).

to fund the plan of reorganization, or [3] the property is unique in character and it is essential to the survival of the reorganized entity."[17]

Under 11 U.S.C. § 362(g)(1), BayFirst – the party requesting stay relief – had the burden to prove lack of equity in the property, and under 11 U.S.C. § 362(g)(2) the Campanellas – the party opposing stay relief – had the burden on all other issues. There was no dispute about the value of the property or the amount of either U.S. Bank's or BayFirst's claims. Thus, BayFirst satisfied its burden to prove lack of equity in the property. But the Campanellas – who had the burden to prove the property was necessary to an effective reorganization – failed to satisfy their burden. Put another way, they failed to show that there was sufficient equity in the property to refinance it; that it would be sold and provide sufficient proceeds to fund a reorganization; or that the property was unique and essential to their survival as reorganized debtors.[18] Thus, BayFirst was entitled to stay relief under section 362(d)(2).[19] On December 9, 2024, the Court entered its order granting stay relief.[20]

## II. DISCUSSION.

On January 6, 2025, the Campanellas moved for reconsideration of the stay relief order[21] and at the same time filed a motion to value BayFirst's secured claim.[22] The crux of their argument is that under 11 U.S.C. §§ 506(a)(1), 1123(b)(5), and 1129(b)(2)(A)(i), they believe they can confirm a chapter 11 plan that reduces the

---

[17] *In re Royal Palm Square Associates*, 124 B.R. 129, 132 (Bankr. M.D. Fla. 1991).
[18] *See id.*
[19] Because the Court determined that BayFirst was entitled to stay relief, BayFirst's alternative request for adequate protection was denied as moot.
[20] ECF No. 40.
[21] ECF No. 46.
[22] ECF No. 47.

value of BayFirst's secured claim to the remaining value of the property after payment in full of U.S. Bank's claim, and that they could then provide a feasible payment stream to BayFirst to service that debt at this reduced value. This may very well prove to be true, but it does not constitute grounds for reconsideration of the stay relief order. Nor would this argument have defeated the stay relief motion had it been timely raised at the stay relief hearing.

Under 11 U.S.C. § 1123(b)(5) a debtor generally cannot modify the rights of the holder of a claim secured only by a security interest in the debtor's principal residence. Although they did not argue this at the stay relief hearing, the Campanellas now argue that BayFirst's claim is not secured only by a security interest in their principal residence. Rather, BayFirst's claim is also secured by a security interest in certain personal property owned by nondebtor Campanella Holdings, LLC, as well as a judgment lien against both Campanella Holdings, LLC and Renzo Campanella, individually. The presence of these additional sources of collateral, according to the Campanellas, would enable them to modify BayFirst's rights under a chapter 11 plan by "stripping down" its lien. Accordingly, they seek reconsideration of the Court's stay relief order because their attorney "inadvertently" failed to raise this argument at the stay relief hearing.

A.    **Reconsideration Must Be Denied Under Rule 60(b).**

The Campanellas seek reconsideration of the stay relief order under Federal Rule of Civil Procedure 60(b)(1) and (b)(6),[23] made applicable in bankruptcy cases by

---

[23] The motion to reconsider was filed 28 days after entry of the stay relief order and was therefore timely under Rule 60(c)(1).

Federal Rule of Bankruptcy Procedure 9024.[24] Under Rule 60(b)(1), a court may grant relief from a final judgment, order, or proceeding based on mistake, inadvertence, surprise, or excusable neglect. A court can also grant relief from a final judgment, order, or proceeding under Rule 60(b)(6) "for any other reason that justifies relief." But reconsideration is not a vehicle to relitigate matters that were or could have been previously raised.[25] It is "an extraordinary remedy to be employed sparingly."[26]

The Campanellas argue that their attorney "inadvertently represented to this Court by omission that the Debtors' primary residence was the only property, real or personal, securing BayFirst's claim."[27] Had their attorney not made this mistake, they assert that they could have argued at the stay relief hearing that they could seek to value and modify the secured amount of BayFirst's judgment lien as a means to defeat the stay relief motion.

To begin, to the extent they rely on Rule 60(b)(6), their request for reconsideration must be denied. Under Eleventh Circuit case law, "claims of attorney error must be made under the more specific Rule 60(b)(1), rather than under the 'residual equitable authority' contained in Rule 60(b)(6)."[28]

---

[24] The Campanellas also sought relief under Federal Rule of Bankruptcy Procedure 4001(a)(3)(B), which pertains to reconsideration of stay relief orders granted without notice. That rule is plainly inapplicable here, as their counsel conceded at the January 29, 2025 hearing, because the Court had granted stay relief after notice and a hearing on December 4, 2024.

[25] *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009).

[26] *Trump v. Cable News Network, Inc.*, 2023 WL 8433599, at *1 (S.D. Fla. 2023) (quoting *Holland v. Florida*, 2007 WL 9705926, at *1 (S.D. Fla. 2007)); *see also Williams v. Cruise Ships Catering & Serv. Int'l, N.V.*, 320 F. Supp. 2d 1347, 1358 (S.D. Fla. 2004) ("reconsideration of a previous order is 'an extraordinary remedy, to be employed sparingly.'") (quoting *Mannings v. School Board of Hillsborough County*, 149 F.R.D. 235, 235 (M.D. Fla. 1993)).

[27] ECF No. 46, at ¶ 7.

[28] *S.E.C. v. Simmons*, 241 Fed. App'x 660, 663 (11th Cir. 2007) (citing *Solaroll Shade & Shutter Corp., Inc. v. Bio-Energy Systems, Inc.*, 803 F.2d 1130, 1133 (11th Cir. 1986)).

The Campanellas fare no better under Rule 60(b)(1), however, because "[t]he Eleventh Circuit does not generally allow . . . Rule 60(b)(1) relief for excusable neglect due to an attorney's conduct."[29] Rather, "a party must demonstrate his own diligence, even where the attorney commits gross misconduct."[30] That "[d]iligence includes the duty of a party to monitor its case to ensure that its interest[s] are sufficiently protected and represented by its attorney."[31]

Here, there is no evidence that the Campanellas themselves did not know about the other property securing BayFirst's claim. Indeed, BayFirst's foreclosure judgment is against both Renzo Campanella and Campanella Holdings, and Renzo Campanella personally signed a note on behalf of Campanella Holdings (an entity he owned at the time), and executed a guaranty in respect of the loan to Campanella Holdings on which BayFirst's judgment is based.[32] Thus, the failure at the stay relief hearing to argue that they could strip down BayFirst's lien based on the existence of other collateral does not constitute mistake, inadvertence, surprise, or excusable neglect. This information was available to the Campanellas at the time. That their attorney did not raise it does not justify reconsideration of the stay relief order under Rule 60(b)(1).

---

[29] *Atmos Nation, LLC v. All Rise Records, Inc.*, 2017 WL 3635111, at *2 (S.D. Fla. 2017) (quoting *Ake v. Mini Vacations, Inc.*, 174 F.R.D. 110, 112 (M.D. Fla. 1997)). "This does not actually penalize innocent clients because a person voluntarily chooses his or her attorney as their representative and, therefore, the client cannot avoid the consequences of this choice in the event of acts or omissions by the attorney." *Ake*, 174 F.R.D. at 112 (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633 (1962)).
[30] *Atmos Nation*, 2017 WL 3635111, at *2 (quoting *Simmons*, 241 Fed. App'x at 664).
[31] *Id.* (quoting *Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 784 (11th Cir. 1993)).
[32] ECF No. 47 at ¶¶ 10-12, Exs. C, D, E.

**B.**     **The Court Would Have Still Granted Stay Relief.**

Even if they had raised this issue at the stay relief hearing, though, it would not have defeated the stay relief motion. First and foremost, the possibility that the Campanellas might be able to confirm a chapter 11 plan that values BayFirst's lien at $632,084.96 has no direct correlation to whether BayFirst's interest in the property is being adequately protected. The record is clear that it is not. As each day passes, interest, fees, and other costs due to U.S. Bank continue to accrue, steadily eroding BayFirst's interest in the property. This is, by definition, lack of adequate protection.[33]

The Campanellas are correct that under 11 U.S.C. § 506(a)(1), the Court can determine the value of a creditor's interest in the estate's interest in property.[34] They are also correct that if a creditor's claim is not secured only by a security interest in the debtor's principal residence, then under 11 U.S.C. § 1123(b)(5), a chapter 11 plan may modify the creditor's rights. And they are correct that under a chapter 11 plan, if a secured creditor's rights can be modified under section 1123(b)(5), then under 11 U.S.C. § 1129(b)(2)(A), the debtor can confirm a plan even if the creditor does not accept the plan's proposed treatment, as long as the creditor retains its liens and receives a payment stream equal to the present value of its secured claim,[35] or the

---

[33] *See Rich Int'l Airways*, 50 B.R. at 18; *Karl A. Neise, Inc.*, 16 B.R. at 601; *Alyucan Interstate Corp.*, 12 B.R. at 806–09.

[34] Under section 506(a)(1), "[s]uch value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a)(1). When valuing property "for purposes of confirming a Chapter 11 plan of reorganization, the proper time for valuation is the date of confirmation." *Deutsche Bank Nat'l Tr. Co. v. Jackson*, 2016 WL 5390594, at *3 (S.D. Fla. 2016) (citing *In re Stanley*, 185 B.R. 417, 425 (Bankr. D. Conn. 1995) (collecting cases)).

[35] 11 U.S.C. § 1129(b)(2)(A)(i).

creditor receives the "indubitable equivalent" of its claim.[36] But the possibility[37] that the Campanellas might be able to confirm a chapter 11 plan with these provisions[38] does not change the facts that (1) BayFirst is not being adequately protected, (2) the Campanellas lack any equity in the property, and (3) the Campanellas failed to prove – let alone proffer or even argue[39] – that the property is necessary to an effective reorganization. As such, even if they had raised their argument about additional collateral securing BayFirst's claim at the stay relief hearing, the Court still would have granted BayFirst stay relief.

Accordingly, it is **ORDERED** that the motion for reconsideration is **DENIED**.

# # #

*Copies furnished to all interested parties by the Clerk of Court.*

---

[36] 11 U.S.C. § 1129(b)(2)(A)(iii).

[37] In addition to proposing an appropriate treatment of BayFirst's claim, there are a number of other requirements the Campanellas would have to satisfy to confirm a chapter 11 plan, including feasibility, the best interests of creditors test, and other requirements. *See generally* 11 U.S.C. § 1129. Although they have since filed a chapter 11 plan (ECF No. 58), a confirmation hearing is still far off. It is premature based on the current record to speculate whether they will be able to meet all the requirements for confirmation.

[38] It is also important to note that these statutory provisions taken together provide no independent right to "strip down" a lien. *See* 11 U.S.C. § 506(a)(1) ("Such value shall be determined . . . *in conjunction* with any hearing on such disposition or use or on a plan affecting such creditor's interest.") (emphasis added); *cf. Dewsnup v. Timm*, 502 U.S. 410 (1992); *Bank of Am., N.A. v. Caulkett*, 575 U.S. 790 (2015). These provisions only apply here if the Campanellas actually confirm a chapter 11 plan.

[39] Although not required, the Campanellas did not file any written response or objection to the stay relief motion in advance of the hearing.